UNITED STATES v. GLOBE SHIPPING CO., INC. (No. 4428)[1]

United States Court of Customs and Patent Appeals, November 1, 1943

Paul P. Rao, Assistant Attorney General (Alfred A. Taylor, Jr., special attorney of counsel), for the United States.

Puckhafer, Rode & Rode (John D. Rode of counsel) for appellee.

[Oral argument October 6, 1943, by Mr. Rao and Mr. Rode]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, Second Division, sustaining the protest of the importer against the classification by the Collector of Customs at the port of New York of certain merchandise described on the invoice as "Cold rolled Steel Sheets lacquered one side, one colour," and awarding importer recovery of a portion of the duties assessed and collected under such classification.

The collector classified the merchandise under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for, assessing duty at the rate of 45 per centum ad valorem. The claim of the importer, sustained by the trial court, is that it is properly classifiable under paragraph 304 of the act as steel sheets, or plates, and dutiable at the appropriate rate dependent upon its value.

The pertinent portions of the respective paragraphs read:

PAR. 304. * * *; sheets and plates and steel not specially provided for; all the foregoing valued at not above 1½ cents per pound, three-tenths of 1 cent per pound; valued above 1½ and not above 2½ cents per pound, five-tenths of 1

cent per pound; valued above 2½ and not above 3½ cents per pound, eight-tenths of 1 cent per pound; valued above 3½ and not above 5 cents per pound, 1 cent per pound; valued above 5 and not above 8 cents per pound, 1⁷⁄₁₀ cents per pound; valued above 8 and not above 12 cents per pound, 2½ cents per pound; valued above 12 and not above 16 cents per pound, 3½ cents per pound; valued above 16 cents per pound, 20 per centum ad valorem: * * *.

PAR. 397. Articles or wares not specially provided for, * * *; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

The nominal appellee in the case is a customs brokerage concern. The actual party in interest appears to be one Walter Richard Geisler whose testimony was taken and who identified and introduced in evidence as Exhibit 1 a sample of the imported merchandise, the lacquered side of which is blue in color.

The Government called two witnesses, the first a Mr. Arthur Cohen, who stated that he was "a mill representative and jobber in tin-mill products," connected with the Metal Purchasing Co., of New York City, and the second a Mr. Raymond I. Dawson, vice president and general manager of a company engaged in "Lithographing and coating on tin plate and tin mill products generally, black plate particularly."

There was also introduced in evidence as importer's Exhibit 2, a report of an analysis of a sample of the imported merchandise by the Government's chemist made by agreement of counsel for the respective parties. A stipulation relating to certain features of the merchandise was entered into by counsel which had the effect of eliminating any necessity for considering the applicability of paragraphs 307, 308, 309, and 310 of the act.

The trial court, after reviewing the evidence in detail, made the following findings of fact, upon the basis of which the protest was sustained:

1. That the involved merchandise consists of steel sheets lacquered on one side with a single color.

2. That the fact that said sheets were lacquered on one side increases the value thereof at least from 3 to 4 per centum.

3. Although lacquered the merchandise is sold as steel sheets.

4. After importation they are used in the manufacture of various articles and in their imported condition are not dedicated to any particular use.

5. That the sheets in question are thinner than 109/1000 inch in thickness.

From our examination of the record, we are of opinion that the findings of fact are in conformity with the weight of the evidence. It is true that the testimony respecting the eventual or ultimate use of the sheets is not very elaborate. The witnesses called by the Government were not questioned and gave no testimony upon this point. The fair purport of the testimony of importer's witness Geisler, we

think, is that they are used in the manufacture of various articles, but "compacts, ladies' compacts," were the only articles specifically named by him, and samples of parts for making compacts (stated to have been stamped from some of the imported sheets) were introduced in evidence as Illustrative Collective Exhibit A. We think, however, that this is a case in which the sample in evidence is a potent witness, and it appears clear to us that various types of articles can be stamped or manufactured from the sheets. Upon the record, taken as a whole, we think it should be held that the sheets in their condition as imported had not been so advanced in manufacture that they had become dedicated to any single use, or class of uses, which is one of the tests applied in determining whether an article contemplated by paragraph 397, *supra*, is "partly or wholly manufactured."

The gist of the Government's contention is that the sheets "have been advanced in condition by lacquering to such an extent that they are manufactures of metal, rather than steel sheets."

The record does not disclose the materials of which the lacquer is composed, nor the process by which it was applied to the imported merchandise in the country (Germany) from which it was exported in 1938. The testimony of the Government's witnesses indicates that the coating of similar domestic sheets is applied by rolling with a machine, but that it could be applied by spraying or by hand painting. Neither of the Government's witnesses seems to have had any experience or to have dealt in similar imported merchandise. The testimony is to the effect that the value of the sheets is enhanced by the coating— that is, that the market price of the coated sheets is higher than that of the uncoated sheets, and that both types are sold as tin sheets or tin plates, the witnesses seemingly using the terms "sheets" and "plates" interchangeably.

In this connection it may be stated that the Summary of Tariff Information, 1929 (Vol. 1, p. 642), prepared by the United States Tariff Commission for the use of Congress in framing the Tariff Act of 1930, states the distinction between the terms "plates" and "sheets" as follows:

Plates are flat pieces of iron or steel not thinner than, 109/1000 of an inch (No. 12 United States standard gauge). If under this thickness the product is called sheets.

Since the pieces here involved are less than 109/1000 of an inch in thickness, they fall dimensionally within the designation of "sheets" so defined.

We do not regard the process of applying the lacquer as being of any particular importance upon the issue here involved. Whatever it may have been, the resulting product was a steel sheet coated on one side. Likewise the increase in value is not regarded as being consequential. It will be observed that the rates of duty provided in

paragraph 304, *supra*, are made dependent upon the *value* of the sheets therein provided for. So, if the merchandise be held classifiable under that paragraph the additional value resulting from their being lacquered will enter into the computation of the duty.

The trial court regarded the decision of this court (affirming that of the trial court) in the case of *Amerlux Steel Corp.* v. *United States*, 18 C. C. P. A. (Customs) 449, T. D. 44700, as here controlling. While (because of certain factual differences and because paragraph 397 was not involved there) we do not go so far as to hold that that decision is controlling here an examination of it, we think, will disclose that much of its reasoning is in point.

Counsel for the Government in presenting the case before us have cited a number of decisions, all of which we have examined. We do not find any one of them applicable under the facts here appearing. They have also recited certain legislative history which likewise has been studied. We find nothing in it that lends support to the Government's contention in this case.

We find no reason which would justify a reversal of the judgment of the trial court and, therefore, it is *affirmed*.